The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole and in light of the fact that the Deputy Commissioner had two opportunities to review and consider the evidence, the undersigned reached the same facts and conclusions as those reached by the Deputy Commissioner, with minor modifications. The record contains conflicting evidence concerning what may have caused a flareup of plaintiff's knee pain after May 18, 1993. Although perhaps unclear, the Deputy Commissioner appears to have refused to consider plaintiff's testimony about the bumping of her knee by a customer's chair and instead accepted a "jumping up and down" incident reported in the medical records. Because the Deputy Commissioner had the opportunity to observe plaintiff as she testified at the hearing, the Full Commission declines to reverse the credibility findings of the Deputy Commissioner. Sanders v. Broyhill FurnitureIndustries, 124 N.C. App. 637 (1996). Even assuming arguendo that the chair-bumping incident occurred, the medical evidence fails to present sufficient evidence of a causal connection between this incident, the compensable injury on April 5, 1993, and any subsequent disability due to her knee condition.
The Full Commission, in its discretion, has determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Aetna Casualty and Surety Company was the carrier on the risk.
4. The date of the alleged injury was April 5, 1993.
In addition, the parties stipulated into evidence 115 pages of medical records and reports.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff as 47 years old. She is a high school graduate. As of April 1993 plaintiff had been employed by defendant restaurant for approximately five months as a waitress. Her duties included serving food to customers and keeping her work station supplied. She had to stand most of the time she was working and she had to lift trays of food.
2. Defendant-employer paid plaintiff at the rate of $2.55 per hour but for tax purposes reported additional tip income to the point that she would be making minimum wage. Neither plaintiff nor her employer kept records of her actual tip income. Plaintiff indicated that she earned $150.00 to $200.00 per week in tips but had nothing written to support her testimony. After averaging the estimated tips with the reported wages, plaintiff's average weekly wage was $195.76.
3. On April 5, 1993 plaintiff was one of two waitresses who were serving a large private party of over twenty people. As plaintiff was bringing in a tray with several prime rib dinners, a child darted out and bumped plaintiff's leg. Plaintiff grabbed the tray to keep it from tipping, lost her balance, and went down on her right knee. She immediately experienced pain in the knee and it began to swell, but she was able to finish her duties that night. As she was leaving work that evening, she mentioned the injury to Ms. Hassapelis, her supervisor, who was busy working at the cash register.
4. On April 5, 1993 plaintiff sustained an injury by accident arising out of and in the course of her employment. The fact that the child bumped into her and knocked her off balance constituted an unusual occurrence which interrupted her regular work routine.
5. Plaintiff did not seek medical treatment and continued working following her injury.
6. On May 18, 1993 plaintiff reported to the emergency room with complaints of right knee pain which she indicated had been present for approximately three weeks, but she denied having sustained an injury to both the admitting clerk and to the nurse who questioned her. Dr. Fowler examined her and ordered an X-ray which revealed marked degenerative disc disease with a large loose body. He prescribed medication for her and gave her a knee immobilizer. She returned to the emergency room early the next morning because of worse pain and saw Dr. Mayer. She told him that she hurt the knee three weeks before by jumping up and down. Dr. Mayer gave her an injection for pain and advised her to call an orthopedic surgeon in the morning. On May 22 Dr. Caffrey came to the emergency room and aspirated fluid from her knee. Thereafter she received treatment from his partner, Dr. Lavender.
7. Plaintiff had previously had four strokes and six heart attacks. Plaintiff was taking Coumadin, a blood thinner, throughout the time in question. Dr. Lavender checked the amount of blood thinning and discovered that it was too high, indicating that she would bleed easily when injured. An MRI was also performed which showed no evidence of torn cartilage or abnormal ligaments, but it did reveal multiple "joint mice" or loose bone fragments within the knee. Dr. Lavender diagnosed her condition as multiple joint mice due to cartilage degeneration from arthritis. Although he thought that surgery would help her condition, he did not recommend that she undergo an operation because she would have to discontinue the Coumadin which would put her at risk for having another stroke. Consequently, he released her from care in October 1993.
8. Plaintiff had pre-existing arthritis in her knee which was due to wear and tear over time. The incident on April 5, 1993 caused bleeding into her knee because of the effect of her medication. However, the bleeding and swelling associated with the injury resolved without treatment. Her allegation that it persisted until she went to the emergency room in May is not accepted as factual in view of the three emergency room reports where histories inconsistent with her testimony were recorded. Although there was a notation by the admitting clerk on May 22, 1993 that plaintiff said it happened at work and she had reported it, the notation was contrary with the earlier records. Plaintiff did not tell either Dr. Fowler or Dr. Mayer about an injury at work. Rather, she told Dr. Mayer that she hurt her knee three weeks before while jumping up and down. Consequently, she has not proven that the knee condition for which she was treated beginning May 18, 1993 was a proximate result of the injury by accident giving rise to this claim.
9. There is insufficient medical evidence of record from which to prove by the greater weight that the medical treatment and any disability plaintiff sustained beginning in May 1993 were causally related to the injury by accident giving rise to this claim.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 5, 1993 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. However, she sustained no disability and did not require medical treatment for the injury. G.S. § 97-2 (6);Anderson v. Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for her injury in question. G.S. § 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This 3rd day of July, 1997.
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN